**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
Case No. 3:02-cr-00068-TBR**

UNITED STATES OF AMERICA                                                PLAINTIFF

v.

WILLIAM ANTHONY JOHNSON                               DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon Defendant William Johnson's ("Johnson") Motion for Compassionate Release. [DN 575]. The government has responded [DN 579] and Johnson has replied. [DN 582]. The government filed a Motion for Leave to File Sur-Reply which was granted. [DN 584]. Subsequently, the government filed a Motion for Leave to Fil Sur-Reply Under Seal [DN 585] and filed the motion. [DN 586]. As such, this matter is ripe for adjudication. For the reasons that follow, **IT IS HEREBY ORDERED** that the government's Motion for Leave to File Sur-Reply Under Seal [DN 585] is **GRANTED**. Johnson's Motion for Compassionate Release [DN 575] is **DENIED**.

**I. Background**

Johnson was prosecuted along with two co-defendants for various crimes stemming from a criminal enterprise to commit arson and murder. He was convicted by a jury of racketeering, conspiracy to participate in a criminal enterprise involved in racketeering, uttering counterfeit obligations, and theft or receipt of stolen mail matter. He also pleaded guilty to three firearm and ammunition-related counts. Johnson appealed his conviction, and the Sixth Circuit affirmed.

*United States v. Johnson*, 440 F.3d 832 (6th Cir. 2006). Johnson is currently serving a life sentence on the racketeering charges and concurrent, lesser sentences on the remaining offenses.

## II. Legal Standard

"The court may not modify a term of imprisonment once it has been imposed except that-

(1) in any case—

    (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
(i) extraordinary and compelling reasons warrant such a reduction"

18 U.S.C.A. § 3582(c)(1)(A). "Under the [First Step Act], courts are now permitted to "consider motions by defendants for compassionate release without a motion" by the BOP Director "so long as the defendant has asked the Director to bring such a motion and the Director fails to or refuses." *United States v. Logan*, 2020 WL 730879, at *1 (W.D. Ky. Feb. 13, 2020).

When determining whether to grant compassionate release, courts must analyze the following factors: (1) whether extraordinary and compelling reasons warrant such a reduction; (2) the applicable policy statements issued by the Sentencing Commission; and (3) the factors set forth in 18 § U.S.C. § 3553(a). *United States v. Marshall*, 2020 WL 114437, * 1 (W.D. Ky. Jan 9, 2020) (citing 18 U.S.C. 3582(c)(1)(A)).

First, the Court must determine whether extraordinary and compelling reasons justify a sentence reduction. Congress has not defined what constitutes an "extraordinary and compelling" reason; however, it has charged the Sentencing Commission with "describing what should be considered extraordinary and compelling reasons for sentence reductions, including the criteria to

be applied and a list of specific examples." *United States v. Webster*, 2020 WL 618828, at *4 (E.D. Va. Feb. 10, 2020) (quoting 29 U.S.C. § 994(t)). The Sentencing Commission commentary provides that extraordinary and compelling reasons may exist due to the defendant's medical condition:

> A) Medical Condition of the Defendant.
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is-
>
> (I) suffering from a serious physical or medical condition,
> (II) suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. 1B1.13.

### III. Discussion

**A. Exhaustion of Remedies**

"Federal law has long authorized courts to reduce the sentences of federal prisoners facing extraordinary health conditions and other serious hardships, but only under very limited circumstances." *United States v. Beck*, —— F.Supp.3d ——,2019 WL 2716505, at *4 (M.D.N.C. June 28, 2019). Under the First Step Act, courts are now permitted to "consider motions by defendants for compassionate release without a motion" by the BOP Director "so long as the defendant has asked the Director to bring such a motion and the Director fails to or refuses." *Marshall,* 2020 WL 114437, at *1 (W.D. Ky. Jan. 9, 2020).

Here, Johnson states he filed a request for compassionate release with the Warden on April 20, 2020. [DN 575 at PageID 3699]. In his reply, Johnson attached an affidavit stating he delivered a handwritten request to the Warden. [DN 582-1]. However, the government has provided records from the prison showing Johnson did not request compassionate release. According to the Administrative Remedy Generalized Retrieval Form, Johnson has not filed an administrative request since 2010. [DN 579-1]. The Sixth Circuit has held exhaustion of administrative remedies is mandatory.

In *Alam,* the Court stated an inmate "must fully exhaust all administrative rights to appeal with the prison or wait 30 days after his first request to the prison." 960 F.3d 831, 833-834 (6th Cir. 2020) (internal quotations omitted). In support, the Court stated:

> "Even if federal courts possessed a general power to create equitable carveouts to statutory exhaustion requirements, Alam does not show why an exception would make sense in the context of this statute. Remember that Congress made compassionate release available only to elderly prisoners and those with "extraordinary and compelling" reasons for release. 18 U.S.C. § 3582(c)(1)(A). For such prisoners, time usually will be of the essence. That would make nearly every prisoner eligible to invoke "irreparable harm" and eligible to jump the line of applications—making the process less fair, not more fair."

*Id.* at 835. This Court "must strictly enforce statutory limits on the timing of a claim's filing." *Id.* at 836. Although, Johnson provided an affidavit, the government has provided direct evidence contrasting Johnson's statement. Therefore, Johnson's motion must be dismissed. Even if Johnson did exhaust his administrative remedies, he would not be entitled to compassionate release.

## B. Extraordinary and Compelling Reasons

### 1. COVID-19 Pandemic

Johnson states his age, heart issues, macular degeneration in both eyes, gastroesophageal reflux disease, and high cholesterol are all reasons for release. Johnson is now 78 years old.

4

According to the Centers for Disease Control ("CDC"), those with heart conditions and older adults are at a greater risk for contracting severe issues from COVID-19.[1] Although the CDC has stated those aged 85 or older are at the greatest risk those 50 and above are at an increased risk.[2] Johnson argues the prison has not managed a tooth problem that has started during the pandemic but does not argue his other conditions are not being appropriately managed. Johnson is being housed at FCI Gilmer. Throughout the pandemic, FCI Gilmer has only had 16 inmates test positive for the virus.[3] There has not been an uncontrolled outbreak. The government has provided the BOP's detailed safety plan to combat the virus. [*See* DN 586 at 3-6]. In *United States v. Gagne,* the Court stated, "Defendant has not presented information to show that her specific medical conditions, medications, and conditions of confinement at FCI Danbury are inclined to uniquely and adversely affect her to the degree sufficient to establish "extraordinary and compelling" reasons. Nor has the Defendant shown that the BoP's response to confirmed cases at FCI Danbury has been inadequate from a medical standpoint." 451 F. Supp. 3d 230, 236 (D. Conn. 2020), appeal withdrawn, No. 20-1169, 2020 WL 3816311 (2d Cir. May 14, 2020). Although Johnson has more severe conditions than Gagne, he has not shown FCI Gilmer's response to the virus to be inadequate. Therefore, he has not shown extraordinary and compelling reasons.

2. **Rehabilitation**

Johnson also argues he has been rehabilitated during his time in prison. In support, he states he has been involved in several programs, he had maintained a job, and his disciplinary record. He

---

[1] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fspecific-groups%2Fhigh-risk-complications.html.
[2] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html.
[3] https://www.bop.gov/coronavirus/.

specifically mentions graduating from the Life Connections Program in 2010. [DN 582 at PageID 3743]. He states,

> "[i]t was an intensified religious project in which inmates attended daily classes, 5 days a week. All students were required to be active participants in daily classes by leading the discussions over a broad range of subjects. Each student was further required to give at least three fifteen-minute speeches before staff members and 128 inmates. There were other demands as well, including perfect attendance, and no disciplinary infractions. It took eighteen (18) months to complete the program and to graduate."

[*Id.*].

"Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. 1B1.13. "However, although rehabilitation cannot, alone, justify a reduction in sentence, it is relevant to whether a reduction is warranted." *United States v. McDonald*, 2020 WL 3166741, at *8 (W.D. Tenn. June 8, 2020). Even when the Court considers rehabilitation as a factor, compassionate release is not justified.

### 3. *United States v. Booker,* 543 U.S. 220 (2005)

Johnson mainly relies on *Booker* to support his motion for compassionate release. Johnson rehashes the arguments he has made through multiple appeals and motions for reconsideration. [*See* DNs 377, 401, 411, 426, 451, 464, 465, 466, 504, 544, 548]. This Court has denied Johnson the relief he seeks each time. The Court has already held Johnson is not entitled to relief under *Booker*. Therefore, this motion must be denied.

### C. §3553(a) Factors

Even though the Court has found Johnson is not entitled to compassionate release, the Court will weigh the sentencing factors in § 3553(a) to determine whether Johnson's sentence should be reduced. *United States v. Willis*, 382 F.Supp.3d 1185, 1188 (D.N.M. 2019). Pursuant to § 3553(a), a court imposing a sentence shall consider:

6

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for [the applicable offense category as set forth in the guidelines];
>
> (5) any pertinent policy statement . . . by the Sentencing Commission;
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C § 3553(a).

Johnson was found guilty of participation in a criminal enterprise involved in racketeering, conspiracy to participate in a criminal enterprise involved in racketeering, uttering counterfeit obligations, and theft or receipt of stolen mail matter. He also pleaded guilty to three counts of unlawful transport of firearms. Through this enterprise, Johnson committed several acts of arson and murdered an individual.

Johnson cites to *United States v. Cantu,* to support his position. "Cantu pleaded guilty to one count of racketeering". 423 F. Supp. 3d 345, 347 (S.D. Tex. June 7, 2019). He was sentenced to 290 months imprisonment. *Id.* Cantu filed a motion for reduction of sentence and his sentence was reduced to 210 months. *Id.* After the First Step Act was signed, filed a second motion for

7

reduction of sentence. *Id.* The Court granted Cantu's motion, in large part, because the government did not oppose Cantu's motion. *Id.* at 352.

The Court stated, "the Government does not oppose him spending the rest of his term of imprisonment in home confinement. For the Government to advocate that the Court issue an order that 'would cause BOP to release the Defendant,'…is beyond what is usual, customary, regular, or common. And given the Government's position, irreparable harm and injustice would result if the Court failed to craft such an order." *Id.* at 352-353. When determining whether Cantu was a threat to the community, the Court noted "Cantu's offense was not a violent one. He has 'no violent criminal history during his prior 50 years of life before incarceration, and he served the next 14 years incarcerated with only one minor fighting incident on his BOP file." *Id.* at 354. Finally, when evaluating the § 3553(a) factors, the Court held even though Cantu's offense was serious, he had served over 14 years and his entire sentence would still be served—just on home confinement. *Id.* at 354-355.

Here, Johnson's circumstances differ substantially. First, the government does oppose the present motion. Second, Johnson was found to commit several arsons and a murder through this enterprise. Unlike Cantu, Johnson has a violent history. Finally, Cantu was still going to serve his sentence on home confinement. Johnson asks to be released from custody completely.

Granting Johnson compassionate release would not comply with the § 3553 factors. Although Johnson has served several years, releasing him from custody would not reflect the seriousness of these crimes. The Court also does not find the public would be adequately protected upon release of Johnson. Therefore, his motion must be denied.

### IV. Conclusion

For the reasons that follow, **IT IS HEREBY ORDERED** that:

1.) Johnson's Motion for Compassionate Release [DN 575] is **DENIED.**

2.) The government's Motion for Leave to File Sur-Reply Under Seal [DN 585] is **GRANTED.**

**IT IS SO ORDERED**.

Thomas B. Russell, Senior Judge
United States District Court

October 15, 2020

cc: William Johnson
    05230-033
    GILMER
    Inmate Mail/Parcels
    P.O. Box 6000
    Glenville, WV 26351
    PRO SE